**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**CHICAGO DIVISION**

| | | |
|---|---|---|
| **RENEE BABBITTS,** | § | **Civil Action No.** 21-cv-6293 |
| **individually and on behalf** | § | |
| **of all others similarly situated** | § | |
| | § | |
| *Plaintiff,* | § | **JURY TRIAL DEMANDED** |
| | § | |
| **v.** | § | |
| | § | |
| **ADVOCATE AURORA HEALTH,** | § | |
| **INC.,** | § | **COLLECTIVE ACTION** |
| | § | **PURSUANT TO 29 U.S.C. § 216(b)** |
| *Defendant.* | § | |
| | § | |

## ORIGINAL COLLECTIVE ACTION COMPLAINT

Plaintiff Renee Babbitts brings this action individually and on behalf of all current and former nurses (hereinafter "Plaintiff and the Putative Class Members") who worked for Advocate Aurora Health, Inc. ("Aurora" or "Defendant"), anywhere in the United States, at any time during the relevant statutes of limitation through the final disposition of this matter, to recover compensation, liquidated damages, and attorneys' fees and costs pursuant to the provisions of Sections 206, 207, and 216(b) of the Fair Labor Standards Act of 1938, as amended 29 U.S.C. § 216(b).

Plaintiff's FLSA claims are asserted as a collective action under Section 16(b) of the FLSA, 29 U.S.C. § 216(b). The following allegations are based on personal knowledge as to Plaintiff's own conduct and are made on information and belief as to the acts of others.

### I.
### OVERVIEW

1.      This is a collective action to recover overtime wages and liquidated damages brought pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–19 to recover unpaid overtime wages and other applicable penalties.

2.      Plaintiff and the Putative Class Members are those persons who worked for Aurora as hourly employees and were responsible for assisting patients in Aurora facilities, anywhere in the United States, at any time during the relevant statutes of limitation, through the final disposition of this matter, and have not been paid for all hours worked nor the correct amount of overtime in violation of federal law.

3.      Although Plaintiff and the Putative Class Members have routinely worked in excess of forty (40) hours per workweek, Plaintiff and the Putative Class Members have not been paid overtime of at least one and one-half their regular rates for all hours worked in excess of forty (40) hours per workweek.

4.      During the relevant time period, Aurora knowingly and deliberately failed to compensate Plaintiff and the Putative Class Members for all hours worked each workweek and the proper amount of overtime on a routine and regular basis during the relevant time periods.

5.      Specifically, Aurora's regular practice—including during weeks when Plaintiff and the Putative Class Members worked in excess of 40 hours (not counting hours worked "off-the-clock")—was (and is) to automatically deduct a 30-minute meal-period from Plaintiff and the Putative Class Members' daily time even though they regularly worked (and continue to work) "off-the-clock" through their meal-period breaks.

6.      The effect of Aurora's practices were (and are) that all time worked by Plaintiff and the Putative Class Members was not (and is not) counted and paid; thus, Aurora has failed to properly compensate Plaintiff and the Putative Class Members for all of their hours worked and resultingly failed to properly calculate Plaintiff and the Putative Class Members' overtime under the FLSA.

7.      Plaintiff and the Putative Class Members did not and currently do not perform work that meets the definition of exempt work under the FLSA.

8.     Plaintiff and the Putative Class Members seek to recover all unpaid overtime, liquidated damages, and other damages owed under the FLSA as a collective action pursuant to 29 U.S.C. § 216(b).

9.     Plaintiff also prays that all similarly situated workers (Putative Class Members) be notified of the pendency of this action to apprise them of their rights and provide them an opportunity to opt-in to this lawsuit.

## II.
## THE PARTIES

10.     Plaintiff Renee Babbitts ("Babbitts") was employed by Aurora in Wisconsin during the relevant time period. Plaintiff Babbitts did not receive compensation for all hours worked or the correct amount of overtime compensation for all hours worked in excess of forty (40) hours per workweek.[1]

11.     The FLSA Collective Members are those current and former hourly employees of Aurora, who were subject to the automatic meal break pay deduction, anywhere in the United States, and at any time from November 22, 2018 through the final disposition of this matter, and have been subjected to the same illegal pay system under which Plaintiff Babbitts worked and was paid.

12.     Defendant Advocate Aurora Health, Inc. is a foreign for-profit corporation, licensed to and doing business in the state of Illinois. Advocate Aurora Health, Inc. may be served through its registered agent for service of process: **Michael E. Kerns, 3075 Highland Pkwy Ste 600, Downers Grove, Illinois 60515**

## III.
## JURISDICTION & VENUE

13.     This Court has federal question jurisdiction over the FLSA claims pursuant to 28 U.S.C. § 1331 as this is an action arising under 29 U.S.C. §§ 201–19.

---

[1] The written consent of Renee Babbitts is attached hereto as Exhibit "A."

14.     This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331 as this is an action arising under 29 U.S.C. §§ 201–19.

15.     This Court has personal jurisdiction over Aurora because the cause of action arose within this district as a result of Aurora's conduct within this District and Division.

16.     Venue is proper in the Northern District of Illinois because this is a judicial district where a substantial part of the events or omissions giving rise to the claim occurred.

17.     Specifically, Aurora's corporate headquarters are located in Downer's Grove, Illinois which is located within this District and Division.

18.     Venue is therefore proper in this Court pursuant to 28 U.S.C. § 1391(b).

## IV.
## ADDITIONAL FACTS

19.     Defendant Advocate Aurora Health, Inc. is an integrated health care network comprising of twenty-six (26) hospitals, more than 500 sites of care, and over 75,000 employees across the states of Wisconsin and Illinois.[2]

20.     To provide its services, Aurora employed (and continues to employ) numerous workers—including Plaintiff and the individuals that make up the putative or potential class. While exact job titles may differ, these employees were subjected to the same or similar illegal pay practices for similar work throughout the United States.

21.     Plaintiff Babbitts was employed by Aurora in Oshkosh, Wisconsin from approximately September of 2016 until June of 2019.

22.     Plaintiff and the Putative Class Members are (or were) hourly employees who were subjected to the automatic meal break pay deduction employed by Aurora for the relevant time-period preceding the filing of this Complaint through the final disposition of this matter.

---

[2] https://www.advocateaurorahealth.org/pdfs/system-fact-sheet-oct-2020_final.pdf

23.     Importantly, none of the FLSA exemptions relieving a covered employer (such as Aurora) of the statutory duty to pay its employees overtime at one and one-half times the regular rate of pay apply to Plaintiff or the Putative Class Members.

24.     Moreover, Plaintiff and the Putative Class Members are similarly situated with respect to their job duties, their pay structure and, as set forth below, the policies of Aurora resulting in the complained of FLSA violation.

25.     Plaintiff and the Putative Class Members are employees who were (and are) paid by the hour.

26.     Plaintiff and the Putative Class Members typically worked approximately forty (40) hours per week.

27.     In addition to their "on-the-clock" hours, Plaintiff and the Putative Class Members worked up to three (3) hours "off-the-clock" per week and have not been compensated for that time.

*Unpaid Lunch Breaks*

28.     Aurora has a policy wherein it automatically deducts at least one, and as many as two, 30-minute meal periods from Plaintiff and the Putative Class Members' daily time.

29.     Hourly employees, such as Plaintiff and the Putative Class Members, automatically have thirty (30) minutes per day for a meal period deducted from his or her hours worked if they work eight (8) or fewer hours in a day. Aurora will deduct one full hour for a meal period from Plaintiff and the Putative Class Members' hours worked if they work more than eight (8) hours in a day.

30.     Moreover, Aurora does not completely relieve Plaintiff and the Putative Class Members from duty during their day for the purposes of taking a meal break. Plaintiff and the Putative Class Members are required to perform duties, whether active or inactive, during all hours of their shift and frequently are unable to receive sufficient time to eat a meal due to their constant patient calls and duties.

31.     Although Aurora does allow Plaintiff and the Putative Class Members to apply for a meal period correction when they are completely unable to take a full meal break, supervisors prevented Plaintiff and the Putative Class Members from applying for the correction.

32.     Specifically, Aurora supervisors regularly harassed those attempting to complete the forms, told employees they were not being team players by filling them out, and even threatened employees who wanted to fill them out with adverse employment actions.

33.     Aurora was (and continues to be) aware that Plaintiff and the Putative Class Members regularly worked (and continue to work) through their meal periods without pay in violation of the FLSA.

34.     When calculating Plaintiff and the Putative Class Members' hours each pay period, Aurora deducted (and continues to deduct) thirty minutes to one hour from Plaintiff and the Putative Class Members' daily on-the-clock hours in violation of the FLSA.

35.     In other words, for each 3-day workweek, Aurora deducted (and continue to deduct) a minimum of 1.5 hours from each workweek's total "on-the-clock" hours. For a 5-day workweek, Aurora deducted (and continue to deduct) a minimum of 2.5 hours from each workweek's total "on-the-clock" hours.

36.     Aurora's systematic deduction of 30-minute to one hour meal periods from Plaintiff and the Putative Class Members' "on-the-clock" time resulted (and continues to result) in Plaintiff and the Putative Class Members working overtime hours for which they were (and are) not compensated at the rates required by the FLSA.

37.     Aurora's systematic deduction of 30-minute to one hour meal periods from actual hours worked at or below forty (40) hours per workweek and actual hours worked in excess of 40 hours per workweek deprived (and continues to deprive) Plaintiff and the Putative Class Members of the required and proper amount of overtime pay in violation of the FLSA.

38.     As a result of Aurora's failure to compensate Plaintiff and the Putative Class Members for performing work "off-the-clock," Plaintiff and the Putative Class Members worked overtime hours for which they were not compensated.

39.     Aurora's failure to compensate Plaintiff and the Putative Class Members for their "off-the-clock" overtime hours violated (and continues to violate) the FLSA.

40.     Aurora knew or should have known that it was (and is) miscalculating Plaintiff and the Putative Class Members' regular rates of pay and that the proper amount of overtime compensation was not being paid to Plaintiff and the Putative Class Members in violation of the FLSA.

41.     Aurora knew or should have known that its failure to pay the correct amount of overtime to Plaintiff and Putative Class Members would cause, did cause, and continues to cause financial injury to Plaintiff and the Putative Class Members.

42.     Aurora knew or should have known that causing and/or requiring Plaintiff and the Putative Class Members to perform necessary work "off-the-clock" would cause, did cause, and continues to cause financial injury to Plaintiff and the Putative Class Members.

43.     Because Aurora did not pay Plaintiff and the Putative Class Members time and a half for all hours worked in excess of forty (40) in a workweek, Aurora's pay policies and practices willfully violate the FLSA.

**V.**
**CAUSES OF ACTION**

**COUNT ONE**
**(Collective Action Alleging FLSA Violations)**

**A.      FLSA COVERAGE**

44.     Paragraphs 1–43 are fully incorporated herein.

45.     The FLSA Collective is defined as:

**ALL HOURLY EMPLOYEES OF ADVOCATE AURORA HEALTH, INC., WHO WERE SUBJECT TO THE AUTOMATIC MEAL BREAK PAY**

**DEDUCTION, ANYWHERE IN THE UNITED STATES, AT ANY TIME FROM NOVEMBER 22, 2018 THROUGH THE FINAL DISPOSITION OF THIS MATTER ("FLSA Collective" or "FLSA Collective Members").**

46.     At all times hereinafter mentioned, Aurora has been an employer within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

47.     At all times hereinafter mentioned, Aurora has been an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

48.     At all times hereinafter mentioned, Aurora has been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has had employees engaged in the operation of health facilities and commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person, or in any closely related process or occupation directly essential to the production thereof, and in that that enterprise has had, and has, an annual gross volume of sales made or business done of not less than $500,000.00 (exclusive of excise taxes at the retail level which are separately stated).

49.     Specifically, Aurora operates numerous health facilities, purchases materials through commerce, transports materials through commerce and on the interstate highways, and conducts transactions through commerce, including the use of credit cards, phones and/or cell phones, electronic mail and the Internet.

50.     In performing the operations hereinabove described, Plaintiff and the FLSA Collective Members were engaged in commerce or in the production of goods for commerce within the meaning of §§ 203(b), 203(i), 203(j), 206(a), and 207(a) of the FLSA. 29 U.S.C. §§ 203(b), 203(i), 203(j), 206(a), 207(a).

51.     Specifically, Plaintiff and the FLSA Collective Members are (or were) non-exempt employees who assisted Aurora's customers and employees throughout the United States. 29 U.S.C. § 203(j).

52.     At all times hereinafter mentioned, Plaintiff and the FLSA Collective Members are (or were) individual employees who were engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. §§ 206–07.

53.     The proposed class of similarly situated employees, i.e. FLSA collective members, sought to be certified pursuant to 29 U.S.C. § 216(b), is defined in Paragraph 45.

54.     The precise size and identity of the proposed class should be ascertainable from the business records, tax records, and/or employee and personnel records of Aurora.

## B.     FAILURE TO PAY WAGES AND OVERTIME UNDER THE FAIR LABOR STANDARDS ACT

55.     Aurora violated provisions of Sections 6, 7 and 15 of the FLSA, 29 U.S.C. §§ 206, 207, and 215(a)(2) by employing individuals in an enterprise engaged in commerce, the operation of a hospital, or in the production of goods for commerce within the meaning of the FLSA for workweeks longer than forty (40) hours without compensating such non-exempt employees for all the hours they worked in excess of forty (40) hours per week at rates at least one and one-half times the regular rates for which they were employed.

56.     Moreover, Aurora knowingly, willfully, and with reckless disregard carried out its illegal pattern of failing to pay Plaintiff and other similarly situated employees the proper amount of overtime compensation for all hours worked over forty (40) each week. 29 U.S.C. § 255(a).

57.     Aurora knew or should have known its pay practices were in violation of the FLSA.

58.     Aurora is a sophisticated party and employer, and therefore knew (or should have known) its pay policies were in violation of the FLSA.

59.     Plaintiff and the FLSA Collective Members, on the other hand, are (and were) unsophisticated laborers who trusted Aurora to pay them according to the law.

60.     The decision and practice by Aurora to not pay Plaintiff and the FLSA Collective Members overtime for all hours worked over forty (40) each week was willful, and was not reasonable nor in good faith.

61.     Accordingly, Plaintiff and the FLSA Collective Members are entitled to be paid overtime wages for all hours worked in excess of forty (40) hours per workweek pursuant to the FLSA in an amount equal to one-and-a-half times their regular rate of pay, plus liquidated damages, attorneys' fees and costs.

## C.      COLLECTIVE ACTION ALLEGATIONS

62.     All previous paragraphs are incorporated as though fully set forth herein.

63.     Pursuant to 29 U.S.C. § 216(b), this is a collective action filed on behalf of Aurora's employees who are (or were) similarly situated to Plaintiff with regard to the work they performed and the manner in which they were paid.

64.     Other similarly situated employees of Aurora have been victimized by Aurora's patterns, practices, and policies, which are in willful violation of the FLSA.

65.     The FLSA Collective Members are defined in Paragraph 45.

66.     Aurora's failure to pay Plaintiff and the FLSA Collective Members overtime compensation at the rates required by the FLSA, results from generally applicable policies and practices of Aurora's, and does not depend on the personal circumstances of Plaintiff or the FLSA Collective Members.

67.     Thus, Plaintiff's experiences are typical of the experiences of the FLSA Collective Members.

68.     The specific job titles or precise job requirements of the various FLSA Collective Members does not prevent collective treatment.

69.     All of the FLSA Collective Members—regardless of their specific job titles, precise job requirements, rates of pay, or job locations—are entitled to be properly compensated their overtime wages for all hours worked in excess of forty (40) each week.

70.     Although the issues of damages may be individual in character, there is no detraction from the common nucleus of liability facts.

71.     Absent a collective action, many members of the proposed FLSA collective will not likely obtain redress of their injuries and Aurora will retain the proceeds of their violations.

72.     Moreover, individual litigation would be unduly burdensome to the judicial system. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of the individual members of the classes and provide for judicial consistency.

73.     Accordingly, the FLSA collective of similarly situated plaintiffs should be certified as defined as in Paragraph 45 and notice should be promptly sent.

## VI.
## RELIEF SOUGHT

74.     Plaintiff Babbitts respectfully prays for judgment against Aurora as follows:

a.     For an Order certifying the FLSA Collective as defined in Paragraph 45 and requiring Aurora to provide the names, addresses, e-mail addresses, telephone numbers, and social security numbers of all putative collective action members;

b.     For an Order approving the form and content of a notice to be sent to the FLSA Collective Members advising them of the pendency of this litigation and of their rights with respect thereto;

c.     For an Order pursuant to Section 16(b) of the FLSA finding Aurora liable for unpaid back wages due to Plaintiff (and those FLSA Collective Members who have joined in the suit),

and for liquidated damages equal in amount to the unpaid compensation found due to Plaintiff (and those FLSA Collective Members who have joined in the suit);

         d.     For an Order awarding the costs of this action;

         e.     For an Order awarding attorneys' fees;

         f.     For an Order awarding pre-judgment and post-judgment interest at the highest rates allowed by law;

         g.     For an Order awarding Plaintiff Babbitts a service award as permitted by law;

         h.     For an Order compelling the accounting of the books and records of Aurora, at Aurora's expense; and

         i.     For an Order granting such other and further relief as may be necessary and appropriate.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff and those similarly situated demand a trial by jury.

Date:   November 23, 2021      Respectfully submitted,

                          */s/ Ryan F. Stephan*
                          Ryan F. Stephan
                          James B. Zouras
                          Megan E. Shannon
                          **Stephan Zouras, LLP.**
                          100 N. Riverside Plaza, Suite 2150
                          Chicago, Illinois 60606
                          312.233.1550
                          312.233.1560 *f*
                          rstephan@stephanzouras.com
                          jzouras@stephanzouras.com
                          mshannon@stephanzouras.cm
                          Firm ID: 43734

ANDERSON ALEXANDER, PLLC
**Clif Alexander** *(Pro Hac Vice Anticipated)*
Texas Bar No. 24064805
clif@a2xlaw.com
**Austin Anderson** *(Pro Hac Vice Anticipated)*
Texas Bar No. 24045189
austin@a2xlaw.com
ANDERSON ALEXANDER, PLLC
819 N. Upper Broadway
Corpus Christi, Texas 78401
Telephone: (361) 452-1279
Facsimile: (361) 452-1284

*Attorneys in Charge for Plaintiffs and Putative Class Members*

## <u>CERTIFICATE OF SERVICE</u>

I, the attorney, hereby certify that on November 23, 2021, I filed the attached with the

Clerk of the Court using the CM/ECF filing system which will send such filing to all attorneys of

record.

<u>  /s/ Ryan F. Stephan_</u>